**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION (GREENBELT)**

| | |
|---|---|
| NEW DAY FINANCIAL, LLC<br>8160 Maple Lawn Boulevard<br>Fulton, Maryland 20759<br>Howard County,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED SERVICES AUTOMOBILE<br>ASSOCIATION<br>9800 Fredericksburg Road<br>San Antonio, Texas 78288<br><br><br>    Defendant. | Civil Action No.<br><br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

  Plaintiff New Day Financial, LLC ("NewDay"), by and through its attorneys, brings this complaint against Defendant United Services Automobile Association ("USAA"). In support thereof, NewDay alleges the following.

## NATURE OF THE ACTION

  1. Plaintiff NewDay brings this action for declaratory judgment against Defendant USAA based on USAA's claims and allegations that NewDay has allegedly: (a) infringed USAA's asserted federal copyright rights, (b) infringed USAA's asserted federal trademark rights, (c) engaged in unfair competition, and (d) infringed USAA's common law trademark rights.

<60</60>

<60</60>

## **PARTIES**

2. Plaintiff NewDay is a limited liability company organized under the laws of the State of Delaware. The company was organized on or about November 27, 2002, and has its headquarters at 8160 Maple Lawn Boulevard, Fulton, Maryland 20759 in Howard County.

3. NewDay registered to do business in Maryland on or about April 14, 2003.

4. On or about July 17, 2012, NewDay applied in Maryland to use the trade name "NewDay USA" and now does business under that trade name.

5. On information and belief, Defendant USAA is an unincorporated association that has a principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. *See* Exhibit A at ¶ 5; Exhibit B.

6. On information and belief, USAA also has offices in Phoenix, Arizona; Colorado Springs, Colorado; Tampa, Florida; London, England; and Frankfurt, Germany. *See* Exhibit C.

7. On information and belief, USAA also has "Financial Centers" in San Antonio, Texas; Colorado Springs, Colorado; Highland Falls (West Point), New York; and Annapolis, Maryland. *See* Exhibit D.

8. USAA's Financial Center in Maryland is located at 125 Prince George Street, Annapolis, Maryland 21401 in Anne Arundel County. *See* Exhibit E.

9. According to USAA's website, its mortgage loan products, including VA loans, are offered through its USAA Bank operating company, which on information and belief, would include its Financial Centers. *See* Exhibit F.

10. On information and belief, USAA has been registered to do business in Maryland since at least 1994. *See* Exhibit G.

11. On information and belief, USAA has been assessed taxes on the personal property it owns in (i) the city of Annapolis, Maryland, from 2013 through 2017; (ii) Anne

Arundel County, Maryland, from 2013 through 2017; and (iii) Montgomery County, Maryland, in 2013 and from 2015 through 2017.  *See* Exhibits H-M.

## JURISDICTION AND VENUE

12.     This Complaint is brought pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201, et seq.  Declaratory judgment jurisdiction exists because there is an actual controversy between NewDay and USAA as to whether NewDay infringes USAA's alleged federal copyright and trademark rights as detailed in this Complaint.

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights, trademarks, and unfair competition) because the underlying causes of action are based on the U.S. Copyright Act and the U.S. Lanham Act.  This Court has subject matter jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction) for the declaratory judgment claim arising the trademark common law of the states.

14.     Personal jurisdiction exists at a minimum over Defendant USAA because it has transacted substantial, continuous, and systematic business in the state of Maryland, sent NewDay a cease and desist letter in Maryland concerning the copyright, trademark, and common law rights at issue in this action, and sued NewDay, a Maryland resident, concerning these same intellectual property rights.

15.     Venue is proper under 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a) and in the Southern Division (Greenbelt) of the District of Maryland because Defendant is subject to personal jurisdiction in this District and a substantial part of the events underlying this action occurred in this District.

## GENERAL ALLEGATIONS

16.     NewDay specializes in providing refinancing and mortgages (almost exclusively VA loans) to veterans and service members.

17. For example, veterans can refinance up to 100% of their home's value through NewDay's "NewDay 100 VA Loan" product.

18. Similarly, veterans can finance up to 100% of the purchase price of a home through NewDay's "NewDay $0 Down VA Home Loan" product.

19. Most of NewDay's loan originations relate to NewDay's refinancing products—e.g., its NewDay 100 VA Loan product. In particular, about 97.8% of NewDay's loan originations (in total dollars) come from refinancing products.

20. The remainder of NewDay's loan originations relate to NewDay's home financing products ("residential mortgages")—e.g., its NewDay $0 Down VA Home Loan product. In particular, about 2.2% of NewDay's loan originations (in total dollars) come from residential mortgages.

21. All told, NewDay did approximately $1.35 billion in business in the United States in 2015 and about $2.31 billion in 2016.

22. NewDay has about 600 employees, with all but about 20 to 30 of those employees working in Maryland.

23. In late 2013 and early 2014, NewDay began advertising its flagship products through a national direct response television campaign. That campaign, in its various iterations, continues today and runs nationally on well-known cable television channels, particularly cable news channels such as Fox News, CNN, and MSNBC.

24. NewDay's direct response television campaign, in its various iterations (including NewDay's "That's Me" advertisements in which a veteran holds up a picture of himself or herself in uniform to identify himself or herself as a veteran), was independently created by an

advertising agency in San Francisco, California—Feld Direct and was not copied from any USAA or other advertising campaign.

25.     NewDay has a website—www.newdayusa.com—that lists its products and is accessible by anyone, like any other website. NewDay's websiteallows visitors to initiate inquiries regarding those products. Once a website visitor initiates an inquiry, NewDay follows up using the contact information provided by the website visitor—e.g., by using the telephone number or e-mail address provided by the visitor to respond to the inquiry.

26.     USAA asserts that NewDay's direct response television advertisements (and related website references), particularly the "That's Me" iterations of its campaign, infringe upon USAA's alleged copyrights. *See, e.g.,* Exhibit A at ¶¶ 51-65. The core of USAA's infringement assertions can be boiled down to its belief that a veteran holding a framed picture of himself or herself in uniform is a protectable copyrightable interest belonging to USAA that was allegedly copied by NewDay. *See id.* There was no copying by NewDay and a veteran referring to a photograph (or video) of him or herself in uniform to identify his or her prior service is a well-known, commonly used, and obvious idea that it not subject to copyright protection.

27.     USAA also alleges that three obviously descriptive portions of NewDay's website infringe its alleged federal registration of the mark "We Know What It Means to Serve." *See id.* at ¶¶ 70-71. One of the portions that descriptively states We Understand What It Means to Serve followed by text (*see id.* at ¶ 70) as part of a much larger and distinctive web page, no longer appears on NewDay's website.

28.     The central activities related to NewDay's alleged infringement of USAA's purported intellectual property occurred in Maryland. For example, NewDay hired Feld Direct and oversaw its development of NewDay's allegedly infringing direct response television

campaign from Maryland; NewDay approved the "That's Me" advertisements and their placement on television from Maryland; NewDay pays for its ad buys from Maryland; NewDay oversaw the creation and approved the design of its allegedly infringing website from Maryland; and NewDay's relevant documents and employees are all in Maryland.

### First Claim for Relief
### (Declaratory Judgment—No Copyright Infringement under 17 U.S.C. § 501)

29. All of the allegations set forth in the preceding paragraphs are incorporated herein by reference.

30. A true, actual, and ripe case or controversy exists between Plaintiff and Defendant concerning whether Plaintiff infringed one or more copyrights purportedly belonging to Defendant.

31. The exclusive rights under the copyrights alleged by Defendant, however, are not valid, protectable, and enforceable rights.

32. By way of non-limiting example, the portions of Plaintiff's national direct response television and related website references that are alleged to infringe Defendant's purported exclusive rights constitute unoriginal *scènes à faire* and, accordingly, are not protectable. There is no infringement of any of Defendant's alleged copyrighted works by Plaintiff.

33. Moreover, the portions of Plaintiff's national direct response television campaign and related website references that are alleged to infringe Defendant's purported exclusive rights, and all other portions, were independently created by the well-respected advertising agency hired by NewDay.

34. Accordingly, Plaintiff is entitled to a declaration that it has not infringed and does not infringe any of Defendant's purported copyright rights.

**Second Claim for Relief**
**(Declaratory Judgment—No Trademark Infringement under 15 U.S.C. § 1114(a))**

35. All of the allegations set forth in the preceding paragraphs are incorporated herein by reference.

36. A true, actual, and ripe case or controversy exists between Plaintiff and Defendant concerning whether Plaintiff infringed one or more trademarks purportedly belonging to Defendant.

37. Plaintiff, however, is not using in commerce any valid, protectable, and enforceable trademark purportedly belonging to Defendant and its alleged infringing uses are merely descriptive and fair uses.

38. Moreover, any alleged present or prior use by Plaintiff of a trademark purportedly belonging to Defendant was not likely to cause confusion in, cause mistake in, or deceive the public.

39. Further, any alleged present or prior use by Plaintiff of a trademark purportedly belonging to Defendant was brief, was not done willfully or purposefully, and was not likely to cause damage to Defendant.

40. Accordingly, Plaintiff is entitled to a declaration that it has not and does not infringe any of Defendant's purported trademark rights.

**Third Claim for Relief**
**(Declaratory Judgment—No Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a))**

41. All of the allegations set forth in the preceding paragraphs are incorporated herein by reference.

42. A true, actual, and ripe case or controversy exists between Plaintiff and Defendant concerning whether Plaintiff falsely designated the origin of its products and services or falsely

described its products and services by using one or more trademarks purportedly belonging to Defendant.

43. Specifically, Plaintiff is not using in commerce any valid, protectable, and enforceable trademark purportedly belonging to Defendant and its alleged infringing uses are merely descriptive and fair uses.

44. Moreover, any alleged present or prior use by Plaintiff of a trademark purportedly belonging to Defendant was not likely to cause confusion in, cause mistake in, or deceive the public.

45. Further, any alleged present or prior use by Plaintiff of a trademark purportedly belonging to Defendant was brief, was not done willfully or purposefully, and was not likely to cause damage to Defendant.

46. Accordingly, Plaintiff is entitled to a declaration that it has not engaged in and does not engage in unfair competition, the false designation of the origin of its products and services, or the false description of its products and services.

## Fourth Claim for Relief
**(Declaratory Judgment— No Trademark Infringement under State Common Law)**

47. All of the allegations set forth in the preceding paragraphs are incorporated herein by reference.

48. A true, actual, and ripe case or controversy exists between Plaintiff and Defendant concerning whether Plaintiff infringed one or more trademarks purportedly belonging to Defendant.

49. Plaintiff, however, is not using in commerce any valid, protectable, and enforceable trademark purportedly belonging to Defendant and its alleged infringing uses are merely descriptive and fair uses.

50. Moreover, any alleged present or prior use by Plaintiff of a trademark purportedly belonging to Defendant was not likely to cause confusion in, cause mistake in, or deceive the public.

51. Further, any alleged present or prior use by Plaintiff of a trademark purportedly belonging to Defendant was brief, was not done willfully or purposefully, and was not likely to cause damage to Defendant.

52. Accordingly, Plaintiff is entitled to a declaration that it has not and does not infringe any of Defendant's purported common law trademark rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

(a) For declaratory relief as pled herein;

(b) For an award of reasonable costs and attorney's fees, including under the Copyright and Lanham Acts; and

(c) For any additional relief as this Court deems just and proper.

DATED this 8th day of November 2017

                    BROWNSTEIN HYATT FARBER SCHRECK, LLP

                    By: */s/ Richard B. Benenson*
                         Richard B. Benenson
                         (D. Md. Bar No. 24802)
                         410 17th Street, Suite 2200
                         Telephone: (303) 223-1100
                         Fax: (303) 223-1111
                         rbenenson@bhfs.com

                         Michael D. Rounds
                         (*pro hac* application forthcoming)
                         Ryan J. Cudnik
                         (admission application forthcoming)
                         5371 Kietzke Lane
                         Reno, Nevada 89511
                         Telephone: (775) 324-4100
                         Fax: (775) 333-8171
                         mrounds@bhfs.com
                         rcudnik@bhfs.com

                         Attorneys for Plaintiff
                         NEW DAY FINANCIAL, LLC

**DEMAND FOR JURY TRIAL**

Demand is hereby made by Plaintiff New Day Financial for a jury trial on all issues trial by jury pursuant to Fed. R. Civ. P. 38(b).

DATED this 8th day of November 2017

                                      BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Richard B. Benenson*
     Richard B. Benenson
     (D. Md. Bar No. 24802)
     410 17th Street, Suite 2200
     Telephone: (303) 223-1100
     Fax: (303) 223-1111
     rbenenson@bhfs.com

     Michael D. Rounds
     (*pro hac* application forthcoming)
     Ryan J. Cudnik
     (admission application forthcoming)
     5371 Kietzke Lane
     Reno, Nevada 89511
     Telephone: (775) 324-4100
     Fax: (775) 333-8171
     mrounds@bhfs.com
     rcudnik@bhfs.com

     Attorneys for Plaintiff
     NEW DAY FINANCIAL, LLC